**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CINDEE CLARK,

                Plaintiff,

vs.                                 Case No.  3:09-cv-302-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I.  Status**

Cindee Clark ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying her claim for disability insurance benefits and

supplemental security income.  Her alleged inability to work is based on the impairments of

nocturnal myoclonus, brittle diabetes mellitus, seizures likely caused by diabetes, fracture

of the left foot resulting from a slip and fall, chest wall contusion and neck ligament tear

resulting from a motor vehicle accident, hypertension, mood disorder due to endocrine

dysfuntion (diabetic lability), depression, and anxiety.  Transcript of Administrative

Proceedings (Doc. No. 15; "Tr.") at 96, 366, 377; Memorandum in Support of Plaintiff's

Appeal of the Commissioner's Decision (Doc. No. 15; "Pl.'s Mem.") at 3.  On April 16, 2007,

Plaintiff filed a claim for disability insurance benefits and supplemental security income,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 8), and the Order of Reference was entered on July 9, 2009 (Doc. No. 10).

alleging an onset date of February 8, 2007.  Tr. at 75; Pl.'s Mem. at 1.  On October 2, 2008,

an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert

("VE") testified.  Tr. at 363-400.  On November 24, 2008, the ALJ issued a Decision finding

Plaintiff not disabled.  Tr. at 12-23.  On February 6, 2009, the Appeals Council denied

Plaintiff's request for review.  Tr. at 4-7.  On April 2, 2009, Plaintiff commenced this action

under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking

judicial review of the Commissioner's adverse decision.  Plaintiff has exhausted the available

administrative remedies, and the case is properly before the Court.

Plaintiff raises one issue: "Is the [ALJ]'s determination that [Plaintiff]'s mental

impairments cause no limitations on her ability to work supported by substantial evidence?"

Pl.'s Mem. at 1.  After a thorough review of the entire record and consideration of the parties'

respective memoranda, the undersigned finds substantial evidence supports the ALJ's

determination that Plaintiff's mental impairments are not severe, as well as the ALJ's findings

regarding Plaintiff's residual functional capacity ("RFC").  Accordingly, the Commissioner's

final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step

sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment;

---

[2]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

(3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The ALJ followed the five-step sequential inquiry.  Tr. at 14-23.  At step one, the ALJ observed that Plaintiff had engaged in part-time work activity since her alleged onset date, which "appears to have been performed above the presumptive level of substantial gainful activity."   Tr. at 14.  Nevertheless, for purposes of the Decision, the ALJ "assume[d] without finding that such work did not constitute substantial gainful activity," and the ALJ proceeded to the next step of the sequential inquiry.  Tr. at 14.  At step two, the ALJ found Plaintiff suffers from the following severe impairments: "nocturnal myoclonus, brittle diabetes mellitus and status post motor vehicle accident chest wall contusion and neck ligament tear."  Tr. at 15.  The ALJ determined Plaintiff's anxiety and depression are "non-severe." Tr. at 15.  At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 16.

The ALJ determined Plaintiff has the RFC to perform light work.  Tr. at 18.  According to the ALJ, in an eight-hour day, Plaintiff can sit, stand, and walk for approximately six hours each; Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently.  Tr. at 18.  The ALJ indicated that Plaintiff can occasionally climb, balance, stoop, kneel, crouch, and crawl, but she cannot engage in repetitive overhead reaching and should avoid concentrated exposure to hazards, including machinery and height.  Tr. at 18.  The ALJ

-3-

determined Plaintiff "has no other manipulative, environmental, communicative, mental or visual restrictions." Tr. at 18. At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a billing clerk. Tr. at 22. The ALJ concluded that Plaintiff has not been under a disability from February 7, 2007 (the alleged onset date) through the date of the decision. Tr. at 23.

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial

evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff contends substantial evidence does not support the ALJ's finding at step two that Plaintiff's mental impairments are not severe, and the ALJ erred by not including mental limitations in Plaintiff's RFC. Pl.'s Mem. at 12. At step two of the sequential evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that his allegations of depression and other mental health issues constitute severe impairments. Nigro v. Astrue, No. 8:06-cv-2134-T-MAP, 2008 WL 360654, at *3 (M.D. Fla. Feb. 8, 2008) (unpublished).

When evaluating mental impairments, the Regulations direct the use of the psychiatric review technique. See 20 C.F.R. §§ 404.1520a and 416.920a. The psychiatric review technique is embodied by the psychiatric review technique form ("PRTF") and is further described in the introduction to section 12.00 of the listing of impairments. See 20 C.F.R.

Part 404, Subpart P, Appendix 1 § 12.00(A).  In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment[3] using the criteria in "paragraph A" of the listing of impairments.  20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A).

Next, if there is a medically determinable mental impairment, the degree of functional limitation resulting from such impairment is ascertained.  20 C.F.R. §§ 404.1520a(c) and 416.920a(c).  The degree of functional limitation resulting from a medically determinable mental impairment is ascertained by rating four "broad functional areas" in "paragraph B" of the listings:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C).  The first three broad functional areas are rated using a five-point scale:  none, mild, moderate, marked, and severe.  20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C).  The fourth is rated using a four-point scale: none, one or two, three, four or more.  20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C).[4]

After the degree of functional limitation resulting from the claimant's medically determinable mental impairment is rated, the severity of the mental impairment is established.  20 C.F.R. §§ 404.1520a(d) and 416.920a(d).  The four broad functional areas

---

[3] Of course, a claimant may have more than one mental impairment.

[4] There are also criteria under paragraph C for certain types of impairments.  See 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.00(A), 12.02(C), 12.04(C).  The criteria under paragraph C are not relevant here.

"are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. If the first three of the four broad functional areas are rated "none" or "mild," and the forth area is rated as "none," the Commissioner generally concludes that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).

Here, the ALJ rated the four broad functional areas pursuant to the psychiatric review technique. Tr. at 15-16. In the first functional area, activities of daily living, the ALJ determined Plaintiff has "mild limitation." Tr. at 15. The ALJ based this finding on Plaintiff's testimony that she lives with her mother and cares for her disabled husband, and that she performs household chores, including cooking, laundry, and vacuuming. Tr. at 15. Substantial evidence supports the ALJ's finding in this regard, as Plaintiff reported to the Social Security Administration that she was able to perform these activities, Tr. at 117-24, and Plaintiff testified that she was able to perform these activities, Tr. at 382, 386.

In the second functional area, social functioning, the ALJ found Plaintiff has "no limitation." Tr. at 15. The ALJ based this finding on Plaintiff's testimony that she has worked as a cashier at Wal-Mart[5] since July 2008 and has not had to leave or take breaks as a result of her alleged mental impairments. Tr. at 15. In addition, the ALJ observed that Plaintiff cares for her disabled husband, goes on daily walks with him, and takes him grocery shopping. Tr. at 15. These reasons are supported by substantial evidence, as Plaintiff

_____

[5] Although the ALJ stated Plaintiff was working as a cashier at Walmart, Tr. at 14, 15, 17, Plaintiff actually testified that she was working as a cashier at "Sam's." Tr. at 375.

testified she has never had to leave work due to her mental impairments, and she takes care of her husband.  Tr. at 381-85.

In the third broad functional area, concentration, persistence, or pace, the ALJ found Plaintiff has "mild limitation."  Tr. at 15.  The ALJ explained that, although Plaintiff testified that she has memory problems, especially with numbers,[6] "the record shows her routinely observed as being alert and oriented with intact memory and adequate concentration upon examination."  Tr. at 15-16 (referring to Tr. at 270 (stating that "[m]ental status examination showed that [Plaintiff] is alert, well oriented, with no evidence of a thinking or perceptual disorder"), 302 (stating that Plaintiff was oriented, with intact memory, normal attention, normal communication skills, "good fund of knowledge," and normal affect and thought processes)).  In addition, the ALJ pointed out Plaintiff testified she enjoys reading and has no difficulty remembering what she has read.  Tr. at 16.  The ALJ's reasons are supported by substantial evidence.  Plaintiff was described as alert and oriented during multiple doctor visits.  Tr. at 139, 270, 293, 302, 328 (describing Plaintiff as "alertly oriented to time, place, and to person" with "good focus and concentration, with exception of interruptions to efficiency of thinking when speaking about her glucose levels and generally she showed good access to personal information").  In addition, Plaintiff testified she would read for nine or ten hours a day if she could, and she is able to remember what she reads.  Tr. at 386-87.[7]

In the fourth functional area, episodes of decompensation, the ALJ found Plaintiff has had "no episodes of decompensation of extended duration."  Tr. at 16.  The ALJ's finding in

---

[6]  Tr. at 375-76.

[7]  Plaintiff clarified that she rereads certain books because she enjoys them, not because she is unable to remember them.  Tr. at 387.

this regard is supported by substantial evidence.  As the ALJ correctly observed, there is no indication in the record that Plaintiff has ever been hospitalized for any mental disorder.  Tr. at 16.[8]

In sum, the ALJ found that Plaintiff has no more than mild limitations in the first three functional areas and no episodes of decompensation in the fourth.  For the foregoing reasons, these findings are supported by substantial evidence.

Based on these findings, the ALJ determined Plaintiff's alleged mental impairments are not severe.  Tr. at 16.  This determination is in accordance with the Regulations.  See 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1) (stating, "[i]f we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe . . .").  The ALJ then proceeded to determine Plaintiff's RFC and found she "has no other manipulative, environmental, communicative, mental, or visual restrictions."  Tr. at 18.

Resisting the ALJ's RFC determination, Plaintiff points to four aspects of the record she argues are inconsistent with the ALJ's finding that Plaintiff has no mental limitations that impact her RFC:  (1) medical records from treating physicians; (2) the opinion of a treating physician; (3) the opinion of a examining physician; and (4) Plaintiff's testimony.  Pl.'s Mem. at 12.  Plaintiff contends "the rationale supplied by the ALJ . . . is not supported by substantial evidence."  Pl.'s Mem. at 14.  Plaintiff's arguments are addressed below.

Plaintiff first argues her medical records support a finding that her mental impairments are severe and impact her RFC.  Pl.'s Mem. at 14-16.  Plaintiff states she has regularly

---

[8] Plaintiff testified that she has been hospitalized for low blood sugar, however.  Tr. at 368, 370-71.

sought treatment for depression and anxiety since the alleged onset date. Id. at 14.  Plaintiff

identifies certain treatment records that she asserts show her mental impairments caused

more than a minimal impact on her functioning.  Id. at 14-15 (referring to Tr. at 167

(indicating Plaintiff stated she was worried about her husband), 169 (appearing to state

"Depression --not doing very well lately"),[9] 174 (indicating anxious affect), 311 (stating that

Plaintiff reported experiencing anxiety and agoraphobia)).   However, there are other

treatment records which indicate Plaintiff's depression and anxiety are not severe and do not

impact her RFC.  Tr. at 166 (indicating Plaintiff's depression and anxiety were stable), 172

(indicating Plaintiff's anxiety was stable), 174 (indicating Plaintiff's depression was stable),

177 (stating that Plaintiff's depression was "perfect" with Zoloft and Wellbutrin), 270

(describing Plaintiff as "euthymic"), 279 (indicating Plaintiff's depression and anxiety were

adequately controlled), 284 (stating that Plaintiff reported she was "coping well with her

stressors"), 293 (stating that Plaintiff felt well overall, and her symptoms of depression and

anxiety were adequately controlled),  297 (stating that "[o]verall she feels well and has no

complaints," and "[d]epression and anxiety remain overall adequately controlled"), 311

(stating that Plaintiff reported improvement with her depression).  These medical records

constitute substantial evidence to support the ALJ's finding that Plaintiff's depression and

anxiety are not severe, as well as the ALJ's findings regarding Plaintiff's RFC.

---

[9] As the Commissioner points out, Memorandum in Support of the Commissioner's Decision (Doc. No. 16; "Def.'s Mem.") at 7, the full quotation appears to be "Depression–not doing well lately b/c they had to move in w/ mother, who flushed all of her meds down the toilet." Tr. at 169.  The Commissioner argues the full quotation actually supports the ALJ's finding that Plaintiff's depression is not severe. See Def.'s Mem. at 7.

Plaintiff's second argument is that the ALJ should have relied upon the opinion of Purnima Kumar, Ph.D., a treating physician, to support the opinion of Philip R. Yates, Ph.D., an examining physician.  Pl.'s Mem at 12-15.  This argument is related to and substantially overlaps with Plaintiff's third argument: that the ALJ should not have rejected the opinion of Dr. Yates.  Id.  For ease of discussion and proper presentation of the issues, these two arguments are addressed together below.

Plaintiff relies primarily on the medical opinion of Dr. Yates in arguing the ALJ erred by not finding Plaintiff's mental impairments to be severe and not including mental restrictions in Plaintiff's RFC.  See Pl.'s Mem. at 15-20.  Dr. Yates was an examining physician who saw Plaintiff once, on September 25, 2008.  Tr. at 326.  As the ALJ observed, Dr. Yates performed a psychological examination at the request of Plaintiff's attorney.  Tr. at 16; see Tr. at 326.  Dr. Yates concluded Plaintiff suffers from "Mood Disorder due to endocrine dysfunction (diabetic lability)."  Tr. at 329.  Dr. Yates summarized his findings:

> In essence, [Plaintiff] experiences a very negative evaluation of herself and her life.  She is extremely anxious and tense, plagued by worry, she is intensely concerned about her physical functioning, and is emotionally labile, showing clearly rapid and extreme mood swings that are quite likely to result in times when she shows poorly controlled anger. . . .

Tr. at 329.[10]

---

[10] Dr. Yates also described Plaintiff as "alertly oriented to time, place, and to person."  Tr. at 328. During her interview with Dr. Yates, Plaintiff "was able to perform serial subtractions without difficulty in understanding the task, [and] she showed good focus and concentration, with exception of interruptions to efficiency of thinking when speaking about her glucose levels and generally she showed good access to personal information."  Tr. at 328.

Dr. Yates also completed a Pyschiatric Review Technique Form, in which he opined

Plaintiff has an organic mental disorder.[11]   Tr. at 330-31.   Dr. Yates's finding of an organic

mental disorder appears to be based upon his observation of the following symptoms:

change in personality; disturbance in mood; and emotional lability and impairment in impulse

control.   Tr. at 331.[12]   According to Dr. Yates, this organic mental disorder results in the

following limitations in the first three of the four broad functional areas:  moderate restrictions

in activities of daily living; marked difficulties in maintaining social functioning; and marked

difficulties in maintaining concentration, persistence, or pace.   Tr. at 340.   As to the fourth

broad functional area, Dr. Yates indicated "moderate" for "repeated episodes of

decompensation, each of extended duration."   Tr. at 340 (capitalization omitted).   Dr. Yates

further indicated Plaintiff has a "residual disease process that has resulted in such marginal

adjustments that even a minimal increase on mental demands or change in the environment

would be predicted to cause the individual to decompensate."   Tr. at 341.

---

[11]   In the listing of impairments, organic mental disorders are defined as follows:

> Organic Mental Disorders: Psychological or behavioral abnormalities associated
> with a dysfunction of the brain.  History and physical examination or laboratory
> tests demonstrate the presence of a specific organic factor judged to be
> etiologically related to the abnormal mental state and loss of previously acquired
> functional abilities.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.02.

[12]   As the Commissioner points out, Def.'s Mem. at 13 n.6, the Regulations require "the medically
documented persistence" of these symptoms.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.02 ¶ A.  Dr.
Yates did not medically document the persistence of the symptoms he observed.  Nor was there any medical
documentation available to Dr. Yates.  Dr. Yates explicitly stated that "[n]o objective medical or psychiatric-
psychological information was available," and that the information in his Psychological Examination Report was
"exclusively received from statements generated by [Plaintiff]."  Tr. at 326.  The lack of medical documentation
regarding the persistence of the symptoms observed by Dr. Yates raises questions as to whether his findings
satisfy the requirements of the Regulations.

The ALJ considered–and rejected–the opinion of Dr. Yates.  Tr. at 17.  The ALJ

provided a detailed explanation for rejecting Dr. Yates's opinion and articulated no less than

three reasons for doing so.  Tr. at 17-18, 22.  First, the ALJ pointed out the contradiction

between Dr. Yates's opinion and Plaintiff's testimony.  Tr. at 17.  Dr. Yates opined Plaintiff

has marked limitations in both her social functioning and her ability to maintain concentration,

persistence, or pace; and Dr. Yates predicted that even a minimal increase in mental

demands or a change in the environment would cause Plaintiff to decompensate.  Tr. at 340-

41.  The ALJ explained these opinions are inconsistent with Plaintiff's testimony.  Tr. at 17-

18.[13]  As the ALJ noted, Plaintiff testified she is able to work four- to five-hour shifts as a

cashier,[14] and Plaintiff testified she takes care of both herself and her disabled husband.  Tr.

at 17; see Tr. at 379, 382-83.

The second reason the ALJ rejected the opinion of Dr. Yates is that his findings are

inconsistent with the evidence of record.  Tr. at 17.  The ALJ pointed out that "no objective

medical, psychiatric or psychological data was provided to Dr. Yates."  Tr. at 17.  The ALJ

observed that treatment records from Plaintiff's primary care provider reflected "her diabetes,

anxiety and depression overall being adequately controlled."  Tr. at 17 (citing Tr. at 279, 293,

297).  The ALJ stated that the treatment records of Plaintiff's therapist indicate Plaintiff had

---

[13]  The ALJ also found Dr. Yates's opinion to be unsupported by any medical evidence.  Tr. at 17-18.

[14]  "Although the issue is not totally clear," the Eleventh Circuit has suggested that the ability to engage in substantial gainful activity may involve the ability to work on a "'regular and continuing basis,'" which means "8 hours a day, for 5 days a week."  Kelley v. Apfel, 185 F.3d 1211, 1214-15 (11th Cir. 1999) (citing Social Security Ruling 96-8p, 1996 WL 374184).  The ability to work four- to five-hour shifts may not equate to the ability to work eight hours a day for five days a week, but it is entirely inconsistent with Dr. Yates's opinion that Plaintiff has marked limitations in both her social functioning and her ability to maintain concentration, persistence, or pace, as well as Dr. Yates's opinion that even a minimal increase in mental demands or a change in the environment would cause Plaintiff to decompensate.

an appropriate affect in May 2008, and Plaintiff was doing well.  Tr. at 17 (citing Tr. at 278, 284).  The ALJ further noted that Eduardo Sanchez, M.D., who had access to Plaintiff's medical records and examined her on June 24, 2008, found no true anxiety disorder and no cognitive deficits or memory defect; Dr. Sanchez diagnosed Plaintiff with major depression, in partial remission, of moderate intensity.  Tr. at 17 (citing Tr. at 270).

The third reason the ALJ rejected the opinion of Dr. Yates is because, as mentioned earlier, Plaintiff has been able to work as a cashier, and she has not had to take breaks or leave work due to her mental condition.  Tr. at 17.  Based on the foregoing, the ALJ articulated adequate reasons supported by substantial evidence for rejecting the opinion of Dr. Yates.

Related to Plaintiff's argument that the ALJ improperly rejected the opinion of Dr. Yates, Plaintiff argues the ALJ erred by not relying upon the opinion of Dr. Kumar, which supports the opinion of Dr. Yates.  Pl.'s Mem. at 15.  In other words, Plaintiff argues Dr. Yates's opinion "is not contradicted by evidence from any other treating or examining physician and is in fact consistent with opinions offered by Dr. Kumar, a treating physician." Id.  Dr. Kumar is a licensed Psychologist who provided counseling services to Plaintiff.  Tr. at 216.  Kumar's April 7, 2008 opinion, in its entirety, consists of only three conclusory sentences: "[Plaintiff] has been seeing me for counseling at this clinic since March 5, 2008 [approximately one month].  She was in counseling with Dr. Andrew Kane before seeing me. At this time [Plaintiff] is not able to work due to extreme emotional stress."  Tr. at 216.  The ALJ rejected Dr. Kumar's opinion as being "inconsistent with the record evidence, including her own treatment notes."  Tr. at 22.

The ALJ's reason for rejecting Dr. Kumar's opinion is supported by substantial evidence. As the ALJ pointed out, Tr. at 20-22, on April 22, 2008, Plaintiff reported she was "looking for a job," Tr. at 285, and on May 6, 2008, Plaintiff reported she was "coping well with her stressors." Tr. at 284. These treatment notes are inconsistent with Dr. Kumar's opinion that Plaintiff is "not able to work due to extreme emotional stress." Tr. at 216.

In addition, Dr. Kumar's opinion is wholly conclusory and unsupported by objective medical evidence. A treating physician's opinion "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." Edwards v. Sullivan, 937 F.3d 580, 583 (11th Cir. 1991). The ALJ had good cause supported by substantial evidence to discount Dr. Kumar's opinion on this basis.

Furthermore, Dr. Kumar's opinion consists only of a single sentence that Plaintiff is unable to work--it is not a medical opinion. See 20 C.F.R. § 404.1527(e); 20 C.F.R. § 416.927(e). Whether Plaintiff is able to work is an administrative finding reserved to the Commissioner. See 20 C.F.R. § 404.1527(e); 20 C.F.R. § 416.927(e). The ALJ was not required to give any special significance to such a conclusory statement. See 20 C.F.R. § 404.1527(e)(3); 20 C.F.R. § 416.927(e)(3).

In connection with her arguments that the ALJ failed to consider properly the opinions of Dr. Yates and Dr. Kumar, Plaintiff also argues the ALJ erred by giving "considerable" weight to the opinion of Gary Buffone, M.D., a state-agency, nonexamining psychological consultant. Pl.'s Mem. at 17-18 (referring to Tr. at 22, 194-207). When the ALJ rated the four broad functional areas in performing the psychiatric review technique at step two of the sequential inquiry, the ALJ bolstered his findings by noting they are consistent with the

findings of the state-agency psychological consultant.   Tr. at 15-16.   The ALJ gave "considerable weight to the findings of the State agency psychological consultant who reviewed the record and found [Plaintiff] did not have a severe mental impairment" because this opinion was "consistent with the overall record evidence."  Tr. at 22.

The Regulations identify relevant factors to be considered when determining the weight to be given to physicians' opinions:  (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5).  A review of the ALJ's Decision reveals he considered these factors.  The ALJ found Dr. Yates's opinion to be unsupported by and inconsistent with the evidence, while the ALJ found the state-agency psychological consultant's opinion to be supported by and consistent with the evidence.  Tr. at 17, 22.  The ALJ also identified in detail those places in the record that do not support and are inconsistent with a finding that Plaintiff's depression and anxiety are severe or result in functional limitations.  Tr. at 20-21.  Upon an independent review of the entire record, and for the reasons stated supra pp. 11-15, the ALJ's decision in this regard is supported by substantial evidence.

Finally, Plaintiff argues Plaintiff's own testimony supports a finding that Plaintiff's depression and anxiety are severe and impacted her RFC.  Pl.'s Mem. at 12.  Arguably, there may be aspects of Plaintiff's testimony which support a finding that Plaintiff's mental impairments are severe or impact her RFC. For example, Plaintiff testified she was "all-over jittery"; she has difficulty focusing; she "stare[s] of [sic] into space"; and she has difficulty

remembering things, particularly numbers. Tr. at 374-75. However, the ALJ identified other aspects of Plaintiff's testimony which contradict the assertion that Plaintiff's depression and anxiety are severe or impact her RFC. Tr. at 17 (rejecting the opinion of Dr. Yates based in part on Plaintiff's testimony that she is able to work as a cashier for four to five hours per day and she is able to take care of her disabled husband). In light of the evidence of record and Plaintiff's activities of daily living, the ALJ found incredible Plaintiff's testimony that her depression and anxiety are severe or result in functional limitations. Tr. at 21-22. An independent review of the record reveals that the ALJ's reasons are supported by substantial evidence.[15]

### V.  Conclusion

Substantial evidence supports the ALJ's determination at step two of the sequential evaluation process that Plaintiff's mental impairments are not severe. A thorough review of the entire record reveals that the Commissioner's final decision is supported by substantial evidence. In accordance with the foregoing, it is

---

[15] To the extent Plaintiff's argument can be construed as asserting that the ALJ failed to include mental limitations in Plaintiff's RFC, the argument is unfounded and insufficiently developed. In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; 20 C.F.R. § 404.1545(a)(2); see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Hickler, 734 F.2d 519, 525 (11th Cir. 1984)). In determining Plaintiff's RFC, the ALJ considered Plaintiff's alleged mental impairments and explicitly found that Plaintiff "has no other manipulative, environmental, communicative, mental, or visual restrictions." Tr. at 18. Thus, the ALJ considered Plaintiff's mental impairments as required by the Regulations and determined they do not result in any functional limitations in the RFC. For the reasons articulated supra pp. 5-16, the ALJ's finding in this regard is supported by substantial evidence.

**ORDERED:**

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four

of 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), **AFFIRMING** the

Commissioner's final decision.

2.      The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on July 29, 2010.

                                            *James R. Klindt*
                                            **JAMES R. KLINDT**
                                            United States Magistrate Judge

jdf
Copies to:
Counsel of Record